## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK ANTHONY LITTLE,<br>    Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-4033 |
| | : | |
| DANIELLE OUTLAW, *et al.*,<br>    Defendants. | : | |
| | : | |

## MEMORANDUM

SURRICK, J.                                                       FEBRUARY 20, 2025

Plaintiff Mark Anthony Little, an unrepresented litigant, commenced this action by filing a complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights and related claims arising from a period of involuntary confinement.[1]  Currently before the Court are Little's Second Amended Complaint ("SAC," ECF No. 9) and his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 7).  Little asserts claims against former Philadelphia Police Commissioner Danielle Outlaw, Philadelphia District Attorney Lawrence Krasner, Mental Health Crisis Worker Eb Adyemi, and Friends Hospital employees Dr. Elizabeth Conlin and

---

[1] After filing his Complaint, Little filed a three-page pleading that was docketed as an Amended Complaint and a lengthy pleading that was docketed as "Exhibits."  (*See* ECF Nos. 8, 9.)  Upon review, the pleading docketed as "Exhibits" appears to be a Second Amended Complaint containing Exhibits. The Court will screen it as such because an amended complaint, once submitted to the Court, supersedes the prior pleading and serves as the governing pleading.  *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (*per curiam*) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").  The Clerk of Court will be directed to amend the docket to reflect the foregoing.

Chaplin Ken. (SAC at 17-19.) For the following reasons, the Court will grant Little leave to proceed *in forma pauperis*. Little's claims asserting violations of certain federal criminal statutes, the Pennsylvania Constitution, and the Fifth, Eighth, Ninth, and Thirteenth Amendments will be dismissed with prejudice. Little's claims against Krasner and Chaplin Ken, and his claim against Outlaw based on her alleged failure to investigate crimes reported by Little will also be dismissed with prejudice. Little's First Amendment retaliation claim against Outlaw, his Fourth and Fourteenth Amendment claims against Adyemi, and his claims against Conlin will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Little will be granted leave to file a third amended complaint.

## I.    FACTUAL ALLEGATIONS[2]

Little alleges that on July 15, 2022, he began emailing now former Commissioner Outlaw to report that he had been sexually assaulted by the owner and occupants of the rooming house where he lived.[3] (SAC at 25-28.) On August 3, 2023, Defendant Adyemi allegedly called Little regarding the emails. (*Id*. at 25.) Two days later, he allegedly arrived at Little's residence with two police officers. (*Id*.) At that time, Little allegedly described the sexual assaults that had occurred. (*Id*.) In response, Adyemi asked whether Little would agree to speak to a psychiatrist regarding a "201 commitment" and told Little he would be free to leave following the

---

[2] The factual allegations set forth in this Memorandum are taken from Little's Second Amended Complaint (ECF No. 9). The Court adopts the pagination supplied by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in Little's pleadings will be corrected for clarity. In drafting his SAC, Little completed the Court's form civil rights complaint and supplemented his allegations with handwritten pages. He also attached numerous exhibits to the supplemented form. The Court considers the entire filing to constitute the SAC.

[3] Little alleges that the owner of this rooming house and other individuals in the house have repeatedly sexually assaulted him. (SAC at 27, 28.) In a prior lawsuit, Little pursued claims against the then current inhabitants of the property based on allegations of repeated sexual assault. *See Little v. Outlaw*, Civ. A. No. 22-1043 (federal claims dismissed with prejudice for failure to state a claim and state law claims dismissed for lack of subject matter jurisdiction with no leave to amend granted).

consultation.[4]  (*Id*. at 25, 28-29.)  Little agreed, but upon arriving at Friends Hospital, Adyemi

allegedly filed a report seeking Little's involuntarily commitment under § 302 of the Mental

Health Procedures Act ("MHPA").[5]  (*Id*. at 25, 29.)  He also allegedly signed papers releasing

Friends Hospital from responsibility for abusing Little and instructed hospital personnel to

inform Little that weekends were not included in the 72-hour hold to which Little was

committed.  (*Id*.)  Adyemi also allegedly stole $79.00 and three bus passes from Little's wallet.

(*Id*.)  Little alleges that shortly after he was committed, he was attacked by unnamed Friends

Hospital staff members, who gave him injections that raised his blood pressure.  (*Id*.)

Little alleges that while committed, he unsuccessfully sought to contact the Patients'

Rights Office at Friends Hospital.  (*Id*. at 27.)  When he was unable to do so, he spoke with

Chaplin Ken, who allegedly began to investigate Little's commitment on his behalf.  (*Id*.)

Chaplin Ken allegedly advised Little that no property log existed for his missing cash and bus

passes.  (*Id*.)  He also allegedly confirmed that Little had seemingly signed a document releasing

Friends Hospital personnel of legal responsibility for his commitment and acknowledging that

the 72-hour hold did not include weekends.  (*Id*.)

---

[4] Little's use of "201" appears to reference § 201 of the MHPA, titled "Persons who may authorize voluntary treatment."  It provides, relevantly:  "Any person 14 years of age or older who believes that he is in need of treatment and substantially understands the nature of voluntary treatment may submit himself to examination and treatment under this act, provided that the decision to do so is made voluntarily."  50 Pa. Stat.and Cons. Stat. § 7201.

[5] Section 302 of the MHPA, entitled "Involuntary emergency examination and treatment authorized by a physician – Not to exceed one hundred twenty hours," provides that:
> Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

50 Pa. Stat and Cons. Stat. § 7302(a).

Little alleges that a hearing was held related to his commitment, but the circumstances surrounding the hearing are unclear. (*Id.* at 29.) He alleges only that prior to the hearing he was told by an unidentified case worker that if he did not agree to a ten-day commitment, he would be committed for 20 days, and that he would be required to "do five days on the ten." (*Id.*) He alleges that prior to being released from Friends Hospital, he was told he would be required to take a monthly injection of Abilify. (*Id.*)

Following his release, Little allegedly contacted former Commissioner Outlaw's office by text requesting the name of Adyemi's supervisor so that he could report Adyemi's conduct, but he received no response. (*Id.* at 30.) He alleges he also contacted several state and federal offices and agencies in an attempt to prevent Adyemi from hurting other innocent people, including the following: the Disciplinary Board of the Pennsylvania Supreme Court; the Pennsylvania Department of Behavioral Health; the U.S. Department of Justice; and the Pennsylvania Office of the Attorney General. (*Id.* at 30-31.) He attaches to the SAC correspondence from these offices and agencies reflecting their responses. (*See* SAC at 103-17.) Little alleges that he was ultimately unable to obtain the contact information for Adyemi's supervisor. (*Id.* at 31.)

Little claims that Adyemi arranged for his involuntary commitment because he persistently asked former Commissioner Outlaw to help him stop the alleged criminal activities of the owner and inhabitants of his rooming house. (*Id.* at 28.) He further claims that former Commissioner Outlaw responded to his request for help to stop the owner and occupants of his rooming house from sexually assaulting him by sending Adyemi and non-Defendant Officer Gable to harm him. (*Id.*) He claims that he has experienced, *inter alia*, emotional trauma,

weight loss, and muscle deterioration.[6]  (*Id.* at 32.)  Based on the foregoing, Little asserts claims

for violation of his First, Fifth,[7] Eighth,[8] Ninth,[9] Thirteenth,[10] and Fourteenth Amendment rights,

---

[6] Of note, Little attributes the emotional distress and muscle deterioration to events that occurred at his rooming house, not to his involuntary commitment.  (*See* SAC at 33.)  He also alleges he has been subjected to trauma that has affected his right testicle.  (*Id.* at 34.)  Little alleges he has also experienced Post-Traumatic Stress Disorder, anxiety, depression, feelings of guilt, anger, and helplessness, and an inability to form social relationships because of the sexual abuse.  (*Id.* at 35-36.)

[7] The SAC references the Fifth Amendment as a basis for recovery.  (SAC at 23.)  The Fifth Amendment provides, in part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  The Due Process Clause of the Fifth Amendment, however, applies only to the federal government and federal officials.  *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 237 (M.D. Pa. 1995).  "It does not apply to the acts or conduct of the states, their agencies, subdivisions, or employees."  *Id.*  Because the defendants here are not federal actors, the Fifth Amendment is not applicable in this case and Little's Fifth Amendment claims will be dismissed with prejudice.  *Patrick v. Rodriguez*, No. 23-00672, 2023 WL 10410947, at *15 (M.D. Pa. Nov. 20, 2023), *report and recommendation adopted*, 2024 WL 1159242 (M.D. Pa. Mar. 18, 2024), *reconsideration denied*, 2024 WL 4868305 (M.D. Pa. Apr. 15, 2024).  To the extent Little asserts due process claims, the Court will construe them as asserted under the Fourteenth Amendment.

[8] The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  The Court cannot discern a basis for an Eighth Amendment claim against the named Defendants based on the allegations in the SAC, and Little's Eighth Amendment claims will, therefore, be dismissed with prejudice.

[9] Little makes a single reference to the Ninth Amendment.  (SAC at 23.)  The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.  This claim is not developed, and, in any event, the Court cannot discern any basis for a Ninth Amendment violation here.  Therefore, Little's Ninth Amendment claims will be dismissed with prejudice.  *See Bowens v. Matthews*, 765 F. App'x 640, 644 (3d Cir. 2019) (*per curiam*) (summarily affirming where inmate "ha[d] not alleged the violation of any specific fundamental right that might be protected by the Ninth Amendment").

[10] Little identifies the Thirteenth Amendment as a basis for his claims.  (SAC at 20.)  The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."  U.S. Const. amend XIII, § 1.  The purpose of the Amendment "'was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States.'"  *McGarry v. Pallito*, 687 F.3d 505, 510-11 (2d Cir. 2012) (quoting *Pollock v. Williams*, 322 U.S. 4, 17-18 (1944) (reversing dismissal of pretrial detainee's complaint where litigant alleged that long hours of work in prison laundry were compelled by physical and legal coercion).  The Supreme Court has defined involuntary servitude as "a condition of servitude in which the victim is forced to work for the defendant by the use of or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process."  *United States v. Kazminski*, 487 U.S. 931, 952 (1988).  Thus, some form of coercion is required.  While the Court understands Little to allege that he was subject to an involuntary commitment under the MHPA, because none of the named Defendants is alleged to have

various provisions of the Pennsylvania Constitution,[11] and various criminal statutes.[12]  (*Id*. at

19.)  As relief, he requests money damages and Adyemi's criminal prosecution.[13]  (*Id*. at 32-

33.)[14]

---

placed Little in a position where he had to perform involuntary labor, this claim will be dismissed with prejudice.

[11] Little asserts claims under various provisions of the Pennsylvania Constitution. (SAC at 20-23.) "Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution."  *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*).  As there is no private right of action for damages under the Pennsylvania Constitution, these claims will be dismissed with prejudice.  *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

[12] Little references several criminal statutes as providing a basis for the Court's jurisdiction, *see* SAC at 19, but it is not clear that he is asserting claims based on these statutes.  To the extent that he is, the claims are not plausible, because criminal statutes generally do not give rise to a basis for civil liability.  *See Brown v. City of Philadelphia Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action."); *Brown v. U.S. Dist. Ct. for the E. Dist. of Pa.*, No. 18-747 (E.D. Pa.) (Apr. 9, 2018 Order at 6 (dismissing claims under 18 U.S.C. § 1589 as "meritless and frivolous")), *aff'd*, 740 F. App'x 239, 240 (3d Cir. 2018) (*per curiam*).  Indeed, the United States Supreme Court has stated that, unless specifically provided for, federal criminal statutes rarely create private rights of action. *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 377 (1958) (stating that where a statute "contains only penal sanctions for violation of it provisions; in the absence of a clear expression of congressional intent to the contrary, these sanctions should under familiar principles be considered exclusive, rather than supplemented by civil sanctions of a distinct statute"); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone.").  The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action for the injured person.  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 689 (1979).

[13] This relief is not available in a §1983 action.  *See Smith v. Friel*, No. 19-943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties").

[14] Little attaches nearly 100 pages of exhibits to his SAC.  These include pages purporting to be screen shots of text messages sent by Little to former Commissioner Outlaw requesting identification of Adyemi's supervisor and investigation into and arrest of individuals who allegedly sexually assaulted him (*id*. at 39-64); a completed Citizen's Complaint No. 61282 against former Commissioner Outlaw describing events that allegedly occurred between August 4 and 8, 2022, the Philadelphia Police Department Internal Affairs Division's response thereto, and a second copy of the same Citizen's

## II.    STANDARD OF REVIEW

The Court will grant Little leave to proceed *in forma pauperis* because it appears that he

is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. §

1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether

a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard

applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher*

*v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether

the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v.*

*Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[the Court

will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences

---

Complaint with attached screen shots of Little's text messages to former Commissioner Outlaw (*id*. at 65-66 and 76-101); paperwork from Penn Medicine dated May 6, 2023 (*id*. at 67-68); a completed Citizen's Complaint against non-defendants describing an apparently unrelated assault that allegedly occurred on April 1, 2023 (*id*. at 69-70); a Unit Safety Search Checklist from Friends Hospital dated August 16, 2022, identifying Little as a patient (*id*. at 71); two copies of January 18, 2024 correspondence from the Office of Disciplinary Counsel of the Disciplinary Board of the Supreme Court of Pennsylvania acknowledging receipt of Little's complaint against District Attorney Krasner (*id*. at 103-04; 118-19)); April 24, 2024 correspondence from the Office of Disciplinary Counsel advising Little that the Office will dismiss his complaints regarding District Attorney Krasner (*id*. at 120-21); a form dated April 25, 2024, acknowledging receipt of and rejecting Little's request for assistance from the Department of Behavioral Health and Intellectual and Disability Services (*id*. at 105); May 21, 2024 correspondence from the U.S. Department of Justice acknowledging receipt of Little's complaint related to improperly shared medical records and rejecting Little's request for assistance (*id*. at 106); May 9, 2023 correspondence from the Health Care Section of the Office of the Pennsylvania Attorney General acknowledging receipt of Little's complaint and rejecting his request for assistance (*id*. at 107); a completed Citizen Complaint Form directed to the U.S. Department of Justice relating to Little's alleged involuntary commitment, with attached, annotated correspondence addressed to Little (*id*. at 108-11); a completed Complaint Report form directed to the Pennsylvania Office of Attorney General asserting claims against Adyemi arising from Little's alleged involuntary commitment (*id*. at 112-15); August 16, 2023 correspondence from the U.S. Department of Justice Civil Rights Division acknowledging receipt of a complaint from Little and rejecting his request for assistance (*id*. at 116); October 19, 2023 correspondence from the Office of Constituent Services of the Pennsylvania Office of Attorney General acknowledging receipt of Little's complaint and rejecting his request for assistance (*id*. at 117); and medical records from Temple University Hospital, Open MRI of Bala Cynwyd, and Tri-County Pain Management reflecting results of various diagnostic tests (*id*. at 122-32).

in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . .

contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366,

374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)),

*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th197 (3d Cir.

2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Little is proceeding

*pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir.

2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

Moreover, a complaint may be dismissed for failing to comply with Federal Rule of Civil

Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). To conform to Rule 8,

a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief.

*See Travaline v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011). The United States

Court of Appeals for the Third Circuit explained that in determining whether a pleading meets

Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a

pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to

the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). A pleading may still satisfy

the "plain" statement requirement "even if it is vague, repetitious, or contains extraneous

information" and "even if it does not include every name, date, and location of the incidents at

issue." *Id.* at 93-94. The important consideration for the Court is whether, "a pro se complaint's

language . . . presents cognizable legal claims to which a defendant can respond on the merits."

*Id.* at 94.

## III.    DISCUSSION

Little asserts claims based on alleged violations of his constitutional rights. The vehicle

by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To

state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

"A civil rights action brought [under] section 1983 is sustainable against state actors only." *Boyd*

*v. Pearson*, 346 Fed. App'x 814, 816 (3d Cir. 2009) (citing *Bright v. Westmoreland Cnty.*, 380

F.3d 729, 736 (3d Cir. 2004). Additionally, "[a] defendant in a civil rights action must have

personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d

1195, 1207 (3d Cir. 1988).

### A.     The MHPA

Little's claims against Chaplin Ken, Dr. Conlin, and Adyemi, are best understood as

arising from his involuntary commitment to Friends Hospital for emergency psychiatric

evaluation under MHPA, 50 Pa. Stat. and Cons. Stat § 7301 *et seq*. The purpose of the MHPA is

"to assure the availability of adequate treatment to persons who are mentally ill, and . . . to

establish procedures whereby this policy can be effected." *Id.* § 7102. The MHPA permits the

involuntary commitment of persons who constitute a "clear and present danger" to themselves or

others. *Id.* § 7301(a). Section 301 sets forth the factors that must be present to subject an

individual to an emergency psychiatric evaluation, and states, relevantly:

> Whenever a person is severely mentally disabled and in need of immediate
> treatment, he may be made subject to involuntary emergency examination and
> treatment. A person is severely mentally disabled when, as a result of mental
> illness, his capacity to exercise self-control, judgment and discretion in the
> conduct of his affairs and social relations or to care for his own personal needs is
> so lessened that he poses a clear present danger of harm to others or to himself.

*Id.*

Section 301(b) provides guidance to determine what constitutes a "clear and present

danger" warranting immediate emergency care. Qualifying circumstances include recently

9

inflicting or attempting to inflict serious bodily harm on another, or threats of harm to another with accompanying acts in furtherance of the threat; an apparent inability to care for oneself such that there is a reasonable probability of death or serious bodily injury in the absence of adequate treatment; an attempt at suicide or a threat to commit suicide accompanied by acts in furtherance of that threat; self-mutilation or a threat to engage in self-mutilation accompanied by acts in furtherance of that threat. *Id*. § 7301(b).

Section 302, the provision Little alleges permitted his commitment, allows involuntary commitment of a person for emergency psychiatric examination for up to 120 hours, where "reasonable grounds [exist] to believe that [the person] is severely mentally disabled and in need of immediate treatment." *Id*. § 7302(a). Involuntary treatment pursuant to this section may be obtained with or without a warrant. In the former circumstance, "[u]pon written application by a physician or other responsible party setting forth facts constituting reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment, the county administrator may issue a warrant requiring a person authorized by him, or any peace officer, to take such person to the facility specified in the warrant." *Id.* § 7302(a)(1). Involuntary commitment can also be achieved without a warrant pursuant to § 302(a)(2), which provides, relevantly:

> Upon personal observation of the conduct of a person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment, any physician or peace officer, or anyone authorized by the county administrator may take such person to an approved facility for an emergency examination. Upon arrival, he shall make a written statement setting forth the grounds for believing the person to be in need of such examination.

*Id*. § 7302(a)(2). The Third Circuit has recognized a "special needs" exception to relevant warrant and probable cause requirements in relation to commitment under the MHPA.

*Marcavage v. Bd. of Trustees of Temple Univ. of Commw. Sys. of Higher Educ.*, No. 00-5362,

2004 WL 1151835, at *6 (E.D. Pa. May 21, 2004), *aff'd sub nom. Marcavage v. Bd. of Trustees of Temple Univ. of Commw. Sys. of Higher Educ.*, 232 F. App'x. 79 (3d Cir. 2007) (denying summary judgment on retaliation, false arrest and imprisonment, and substantive due process claims arising from involuntary commitment under MHPA, but granting summary judgment on procedural due process claim, discussion contours of the statute) (citing *Doby v. DeCrescenzo*, 171 F.3d 858, 871 (3d Cir. 1999) (further citations omitted)). In *Doby*, the Third Circuit held that "the temporary involuntary commitment of those deemed dangerous to themselves or others [pursuant to the MHPA] qualifies as a 'special need' permitting the state to act without a warrant." *Doby*, 171 F.3d at 871. *Doby* affirmed the constitutionality of the MHPA, noting the narrow scope of § 302 (limiting involuntary commitments to emergency situations) and the procedural safeguards embedded in the statute. The court concluded:

> Because the section 7302 procedures exist to respond to emergency cases, . . . [t]he statutory requirement that the individual appear "responsible" and the warning on the application form that false statements can subject a petitioner to criminal prosecution are sufficient safeguards in light of the circumstances to assure the reliability of information communicated to the delegate.

*Id.* at 872.

A person committed under § 302 must "be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of § 301(b) and in need of immediate treatment," and released if such a finding is not made. 50 Pa. Stat. and Cons. Stat. § 7302(b). *See also Marcavage*, 2004 WL 1151835, at *4. The person also has certain notification rights, which are as follows:

> Upon arrival at the facility, the person shall be informed of the reasons for emergency examination and of his right to communicate immediately with others. He shall be given reasonable use of the telephone. He shall be requested to furnish the names of parties whom he may want notified of his custody and kept informed of his status. The county administrator or the director of the facility shall:

> (1) give notice to such parties of the whereabouts and status of the person, how
> and when he may be contacted and visited, and how they may obtain information concerning him while he is in inpatient treatment; and
>
> (2) take reasonable steps to assure that while the person is detained, the health and safety needs of any of his dependents are met, and that his personal property and the premises he occupies are secure.

*Doe v. Wolf*, No. 16-6039, 2017 WL 3620005, at *3 (E.D. Pa. Aug. 23, 2017) (quoting

§ 7302(c)(1)-(2)).  If additional treatment is required beyond the 120 hours permitted under

§ 302, the facility at which the individual is committed must file an application with the Court of

Common Pleas seeking extended involuntary treatment under § 7303.  *See Robinson v. Geisinger*

*Hosp.*, No. 18-989, 2019 WL 4898778, at *7 (M.D. Pa. Aug. 7, 2019), *report and*

*recommendation adopted*, 2019 WL 4885949 (M.D. Pa. Oct. 3, 2019), *aff'd*, 814 F. App'x. 670

(3d Cir. 2020) (granting motion to dismiss false arrest and false imprisonment claims on Rule 8

grounds in case arising from involuntary commitment under MHPA and discussing requirements

of the Act).

Involuntary civil commitment constitutes a serious liberty deprivation, and a person may

bring a federal civil rights action where the deprivation is achieved by unconstitutional means.

*Marcavage*, 2004 WL 1151835, at *4 (citing *Addington v. Texas,* 441 U.S. 418, 425, (1979)).  A

person acting pursuant to the MHPA may not be held civilly liable under state law "[i]n the

absence of willful misconduct or gross negligence."  *Id*. (citing 50 Pa. Stat and Cons. Stat.

§ 7114.)

### B.    Claims Arising From Involuntary Commitment

Little alleges that he was brought to Friends Hospital by Adyemi after agreeing to submit

to a voluntary examination under § 201 of the MHPA, but that, upon arriving at the hospital,

Adyemi signed papers to arrange for Little's involuntary commitment under § 302 of the MHPA.

Little asserts claims against two individuals associated with Friends Hospital and Adyemi, and the Court liberally construes these claims as related to Little's commitment.

### 1.    Claims Against Chaplin Ken

Little names Friends Hospital employee Chaplin Ken as a Defendant.  (SAC at 17-18.) Little alleges that, following his commitment and in response to his request for assistance, Chaplin Ken investigated the circumstances surrounding Little's commitment.  (SAC at 27.) There are no further allegations describing any conduct engaged in by Chaplin Ken.  Little does not allege that Chaplin Ken participated in his commitment or that any of Chaplin Ken's actions resulted in harm.  The nature of the claims against Chaplin Ken are unclear.  It is also not clear that Chaplin Ken is a state actor subject to liability under § 1983.

Whether a defendant is acting under color of state law – *i.e.*, whether the defendant is a state actor – depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself."  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).  Additionally, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).  Rather, to support a finding of state

action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'"  *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).  Notably, in the context of commitments under the MHPA, "courts have held that private health care facilities and physicians acting under the provisions of the MHPA are not state actors for purposes of Section 1983." *Covell v. Smith*, No. 95-0501, 1996 WL 750033, at *6 (E.D. Pa. Dec. 30, 1996) (collecting cases).

Little does not allege that either Chaplin Ken or his employer, Friends Hospital, exercised powers that are traditionally the exclusive prerogative of the state, that either acted with the help of or in concert with state officials, or that the state has so far insinuated itself into a position of interdependence with either Chaplin Ken or Friends Hospital that the actions of the Friends Hospital employees must be recognized as a joint participation Little's commitment. Accordingly, Little's constitutional claims against Chaplin Ken are dismissed because he has not plausibly alleged that Chaplin Ken is a state actor or was acting under color of state law. Moreover, the factual allegations in the SAC suggest that Chaplin Ken did not participate in Little's involuntary commitment but interacted with Little only afterwards.  There does not appear to be any other basis for a claim against Chaplin Ken, and the dismissal, accordingly, will be with prejudice.

### 2.    Claims Against Dr. Conlin

Little names Dr. Elizabeth Conlin as a Defendant but does not include any factual allegations in the SAC describing any conduct engaged in by Conlin.  He, accordingly, has not stated a plausible constitutional claim against her.  *See Rode*, 845 F.2d at 1207 ("[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable). Moreover, his claim against Conlin does not satisfy Rule 8 of the Federal Rules of Civil

Procedure.  *See Fabian v. St. Mary's Med. Ctr.*, No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa.

Aug. 11, 2017) ("Federal Rule of Civil Procedure 8 requires that pleadings provide enough

information to put a defendant on sufficient notice to prepare their defense and also ensure that

the Court is sufficiently informed to determine the issue.") (quotations omitted).  In other words,

"[a] complaint must contain sufficient clarity to avoid requiring a district court or opposing party

to forever sift through its pages in search of the nature of the plaintiff's claim."  *Prelle v. United

States by Prelle*, No. 22-1453, 2022 WL 16958896, at *1 (3d Cir. Nov. 16, 2022) (*per curiam*)

(internal quotations and citations omitted).  Because Little provides no facts describing any

actions taken by Conlin, the SAC fails to provide fair notice of the grounds upon which claims

against her rest, as required by Rule 8.  *See Afzal v. N.J. Bd. of Med. Examiners*, No. 22-1609,

2022 WL 4533826, at *3 (3d Cir. Sept. 28, 2022) (*per curiam*) (affirming dismissal of complaint

pursuant to Rule 8 because plaintiff failed to plead adequate factual content to support a

reasonable inference that defendants were liable and failed to present cognizable legal claims to

which defendants could respond on the merits).  For these reasons, Little's claims against Conlin

must be dismissed.

Additionally, as noted, "courts have held that private health care facilities and physicians

acting under the provisions of the MHPA are not state actors for purposes of Section 1983."

*Covell*, 1996 WL 750033, at *6.  This suggests that any attempt by Little to amend his

constitutional claims against Conlin may be futile.  However, in an abundance of caution, and

because in the absence of any allegations describing Conlin's conduct, the Court cannot state

with certainty that Little cannot state a plausible claim against her, he will be granted leave to

amend his claims against her.

### 3.    Claims Against Adyemi

Little alleges that Adyemi was responsible for his involuntary commitment at Friends Hospital.[15]  The Court liberally construes Little's claims against Adyemi as arising under the Fourth and Fourteenth Amendments.  For the following reasons, the claims are not plausible.

### a.    Fourth Amendment Seizure/False Imprisonment Claim

"The Fourth Amendment applies to seizures in civil, as well as criminal, proceedings. The fundamental inquiry in such proceedings, however, remains whether the government's conduct is reasonable under the circumstances."  See Marcavage , 2004 WL 1151835, at *6 (discussing Doby in context of motion for summary judgment on plaintiff's unreasonable seizure

---

[15] Little also asserts that in the course of arranging for Little's commitment, Adyemi stole cash and bus passes.  (SAC at 25, 27, 29.)  To the extent Little seeks to assert a constitutional claim based on the conversion of cash and bus passes, the claim fails because adequate post-deprivation remedies are available in state court.  See Spencer v. Bush, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting Hudson, 468 U.S. 517, 533 (1984))).  While the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Con. Stat. § 8541, provides "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," there are exceptions to this grant of immunity.  See id. § 8542(b).  One such exception is that a political subdivision like the City of Philadelphia may be held liable:

> for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b).  As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

See id. § 8542(a).  As alleged, Adyemi's conversion of the cash and bus passes was not negligent and, therefore, the above exception to the Political Subdivision Tort Claims Act does not apply.  Little has a meaningful post-deprivation remedy available for his property loss claim in an appropriate state court, so his constitutional claim is not plausible and must be dismissed.  In the alternative, if Adyemi is not an employee of the City of Philadelphia, Little can pursue a conversion claim in an appropriate state court.

and false arrest claims following involuntary commitment under MHPA) (further citations omitted).  In determining whether an official's conduct was reasonable within the meaning of the Fourth Amendment, "we must decide whether the actions of the [officials] were 'objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  *Id.* at 874 (quoting *Graham v. Connor,* 490 U.S. 386, 397, (1989)).  As explained above, in the context of a commitment under the MHPA, the commitment can be achieved either with or without a warrant, subject to the requirements of the MHPA.  The reasonableness of the conduct resulting in the allege seizure is determinative.  Here, the allegations in the SAC are not sufficient to state a plausible Fourth Amendment claim.

Little alleges that Adyemi arrived at his residence to discuss emails that Little had sent to former Police Commissioner Outlaw reporting alleged sexual assaults.  Following this discussion, Adyemi allegedly asked whether Little would consent to voluntary treatment under § 201 of the MHPA.  Little alleges that he agreed to receive treatment and was transported to Friends Hospital, where Adyemi allegedly signed papers involuntarily committing Little under § 302 of the MHPA.  (SAC at 25, 28-29).  Little does not provide any other facts describing the circumstances surrounding his commitment.  He does not allege, *inter alia*, whether Adyemi or the police officer that allegedly accompanied him to Little's residence presented a warrant, or whether he was examined by a physician at Friends Hospital.  (*See* SAC.)  He does not describe his state of mind other than to allege that he accepted an offer of voluntary treatment.  In these circumstances, the Court cannot determine whether Adyemi acted unreasonably under the circumstances so as to make the claim plausible.  *See, e.g., Robinson*, 2019 WL 4898778, at *7 (dismissing pursuant to Rule 8 of the Federal Rules of Civil Procedure false arrest and false imprisonment claim of plaintiff involuntarily committed under the MHPA where plaintiff alleged

17

that he was involuntarily committed, and that an extension of his commitment was requested even though there were no reports on file describing suicidal ideations or violence or the threat of violence on his part).  Little's Fourth Amendment claim will be dismissed, and he will be granted leave to amend this claim.

<b>b.    Due Process Claims</b>

Little may be asserting due process claims against Adyemi based on his involuntary commitment.  The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).

Three kinds of § 1983 claims may be brought under the Due Process Clause of the Fourteenth Amendment.  *Zinermon v. Burch,* 494 U.S. 113, 125 (1990).  First, a plaintiff may bring suit under § 1983 for a violation of his specific rights as guaranteed by the Bill of Rights.  *Id.*  Second, a plaintiff may assert a Fourteenth Amendment claim under the "procedural" aspect of the Due Process Clause, which guarantees fair procedure for the deprivation of a constitutionally protected interest in life, liberty, or property.  *Id.*  Third, a plaintiff may assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.  *Id.* (quoting *Daniels v. Williams,* 474 U.S. at 331)).

18

### 1.    Procedural Due Process

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of a liberty or property interest.  To establish a procedural due process violation, a person must first demonstrate that he has been deprived of a constitutionally protected property or liberty interest.  *Daniels,* 474 U.S. at 339; *Renchenski v. Williams,* 622 F.3d 315, 325 (3d Cir. 2010).  Only upon finding that a protected interest is asserted does a court consider the constitutional sufficiency of the procedures associated with the interest.  If a liberty or property interest is found, the next step in the due process inquiry is to determine what process is due.  Stated another way, in order to state a plausible Fourteenth Amendment due process claim, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life liberty, or property, and (2) the procedures available to him did not provide due process of law."  *Rosado v. City of Coatesville*, No. 19-2426, 2020 WL 1508351, at *3 (E.D. Pa. Mar. 30, 2020) (quoting *Hill*, 455 F.3d at 234).  Due process is not a technical conception with a fixed content unrelated to time, place, and circumstance.  *Gilbert v. Homar,* 520 U.S. 924, 930 (1997).  Rather, "due process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

Involuntary commitment implicates a liberty interest protected by the due process clause. *Vitek v. Jones*, 445 U.S. 480, 491-91 (1980).  The Third Circuit has observed that the MHPA "procedure was created to allow the counties to handle emergency situations. Courts have stated repeatedly that due process is a flexible notion and that what kind of process is due depends on the individual and state interests at stake. . . .  [Thus] it may be reasonable . . . for a state to omit

a provision for notice and a hearing in a statute created to deal with emergencies, particularly where the deprivation at issue, in this case detention for a maximum of several hours to permit an examination, continues for only a short period of time." *Doby,* 171 F.3d at 870 (citing *Zinermon v. Burch,* 494 U.S. 113, (1980); *Memphis Light, Gas and Water Div. v. Craft,* 436 U.S. 1, (1978)). The MHPA mandates such an examination occur within two hours of an individual's involuntary commitment, and the statute provides civil remedies for those improperly detained under the statute. *See* <u>Marcavage,</u> 2004 WL 1151835, at *9 (citations omitted). *See also Benn v. Univ. Health Sys.*, No. 99-6526, 2001 WL 1251207, at *4-5 (E.D. Pa. July 24, 2001) (granting summary judgment on due process claim based on denial of hearing prior to involuntary commitment under MHPA where facts established plaintiff was examined prior to commitment, commitment lasted less than 120 hours, and plaintiff was in contact with family, therapist, and lawyer during commitment). It is unclear whether the MHPA's requirements were followed in this case because the allegations describing the events surrounding Little's commitment are undeveloped. As a result, Little has not plausibly asserted a procedural due process claim and this claim will be dismissed. *See Hovis v. Cnty. of Lebanon*, No. 24-355, 2024 WL 4631830, at *7 (M.D. Pa. Oct. 30, 2024) (dismissing procedural due process claim arising from involuntary commitment under MHPA where it appeared procedures mandated under §§ 302 and 303 were followed, and hearing before hearing officer and review by the Court of Common Pleas were alleged to have occurred). Little will be granted leave to amend this claim.

### 2.    Substantive Due Process

Little may be seeking to assert a substantive due process claim. "'[A] substantive due process violation is established if the government's actions were not rationally related to a legitimate government interest or were in fact motivated by bias, bad faith or improper motive.'"

*Doby*, 171 F.3 at 871 n.4 (quoting *Sameric Corp. of Delaware v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).  However, the Third Circuit has determined that "the MHPA meets the rationality test imposed by substantive due process."  *Doby*, 171 F.3d at 871.  Additionally, the United States Supreme Court has held that a defendant's conduct must "shock the conscience" to rise to the level of a substantive due process violation.  *Benn*, 2001 WL 1251207, at *6 (citing *Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)).

The factual allegations in the SAC are too undeveloped to permit the Court to determine whether the conduct alleged was motivated by bias, bad faith, or improper motive, and the SAC includes no allegation that the conduct of any of the Defendants "shocked the conscience."  For these reasons, any substantive due process claim Little seeks to pursue is not plausible and will be dismissed.  *See Hovis*, 2024 WL 4631830, at *7 (dismissing substantive due process claim where plaintiff did not allege that defendant's conduct shocked the conscience).  Little will be granted leave to amend this claims.

### C.    Claims Against Former Commissioner Outlaw

The source of Little's claims against former Commissioner Outlaw appears to be two-fold.  First, he alleges that he emailed Outlaw repeatedly seeking help following an alleged sexual assault or assaults by the owner and occupants of his rooming home.  He alleges both that Outlaw did not render assistance and that she retaliated by sending police officers to harm him in response to the emails.  (SAC at 28.)  Little also alleges that despite numerous text messages, former Commissioner Outlaw did not provide him with the name of Adyemi's supervisor following Adyemi's alleged commitment of Little.  (SAC at 30.)  The Court liberally construes the claims as asserting (1) a failure to protect and investigate and (2) alleged retaliation.

Little's claim based on Outlaw's alleged failure to protect him and investigate the alleged

assaults he reported to her is not plausible because, "[a]s a general matter, . . . a State's failure to

protect an individual against private violence simply does not constitute a violation of the Due

Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).

Additionally, private citizens do not have a constitutionally protected right to investigation of

criminal charges. *See Sanders v. Downs*, No. 08-1560, 2010 WL 817475 at *5 (M.D. Pa. Mar. 9,

2010) (dismissing plaintiff's claim that police defendants failed to adequately investigate thefts

at his home, since "[t]here is no statutory or common law right, much less a constitutional right,

to [such] an investigation") (quoting *Fuchs v. Mercer Cnty.*, 260 F. App'x 472, 475 (3d Cir.

2008) (alterations in the original); *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003)

(quotations omitted) ("[A]n allegation of a failure to investigate, without another recognizable

constitutional right, is not sufficient to sustain a section 1983 claim."); *Boseski v. N. Arlington

Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (*per curiam*) ("Boseski has no cognizable

claim against a government entity for its failure to investigate or bring criminal charges against

another individual."); *Nedab v. Lencer*, No. 06-54, 2007 WL 853595 at *3 (W.D. Pa. Mar. 20,

2007) (plaintiff lacked standing to assert constitutional violation premised on state police

officer's alleged failure to investigate and file criminal charges related to assault against

plaintiff).  Accordingly, Little's claims against Outlaw based on the failure of the Philadelphia

Police to investigate his claims of sexual assault is not plausible and must be dismissed.  Any

claim based on Outlaw's alleged failure to respond to Little's text messages seeking information

about Adyemi's supervisor fails for the same reason and must also be dismissed.

As to his retaliation claim, Little asserts that in response to his emails seeking protection

from assaults by the owner and occupants of his rooming house, and unspecified abuse by

officers of the 22nd Precinct, Outlaw sent Adyemi and non-Defendant Police Officer Gable to "harm" him.  (SAC at 28.)  In order to state a plausible First Amendment retaliation claim, a prisoner must allege that:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).  "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'"  *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original).  The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation.  *See Watson*, 834 F.3d at 422.

Reporting a crime to the police is protected activity.  *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citation omitted) ("As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."); *Ibarra v. City of Chicago*, 816 F.Supp.2d 541, 550 (N.D. Ill. 2011) (quoting *Meyer v. Bd. of Cnty. Comm'rs of Harper City*, 482 F.3d 1232, 1243 (10th Cir. 2007) ("The reporting of a crime to police officers 'constitutes an exercise of the First Amendment right to petition the government for the redress of grievances.'")  Further, "[i]nvoluntary civil commitment constitutes a serious liberty deprivation, and a person may bring a federal civil rights action where the deprivation is achieved by unconstitutional means."  *Marcavage*, 2004 WL 1151835, at *4 (citing *Addington* 441 U.S. at 425).  However, the SAC

does not include factual allegations sufficient to state plausibly that Defendant Outlaw arranged for Little's involuntary commitment because he reported that he had been the victim of a crime. Little alleges only in conclusory fashion that Outlaw sent a police officer and Adyemi to his residence to "harm" him. (SAC at 28.) In other words, he has not alleged that his constitutionally protected conduct was a substantial or motivating factor for the involuntary commitment. He does not specify the nature of the harm Outlaw intended and does not, in the SAC, allege that she was responsible for his commitment, or that his commitment constituted the harm to which he referred. (*See id*.) Rather, he alleges that Adyemi arranged for his commitment, *see id*.at 27, and alleges that he sought Defendant Outlaw's assistance in obtaining Adyemi's supervisor's contact information so that he could report his conduct, *id*. at 30. In these circumstances, Little has not plausibly stated a retaliation claim against Defendant Outlaw based on his involuntary commitment. He will, however, be granted leave to amend this claim.

### D.    Claims Against District Attorney Krasner

Defendant Krasner is not alleged to have participated in Little's involuntary commitment, and the conduct upon which Little's claims against him are based took place more than a year after Little's August 2022 commitment. Little alleges that on November 9, 2023, he sent a complete copy of a complaint against Adyemi to District Attorney Lawrence Krasner. (SAC at 8.) He further alleges that Krasner did not act on his complaint or respond to a follow-up letter sent on December 28, 2023. (*Id*.) Liberally construed, the claim against Krasner appears to arise from his apparent failure or refusal to prosecute Adyemi based on the allegations contained in the complaint Little sent to him. This claim is not plausible.

First, prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating

a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute immunity extends to the decision to initiate a prosecution. *Imbler*, 424 U.S. at 431. Absolute immunity can extend to "the duties of the prosecutor . . . involv[ing] actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Mancini v. Lester*, 630 F.2d 990, 994 n.6 (3d Cir. 1980) (quoting *Imbler*, 424 U.S. at 431 n.33). This means prosecutors have absolute immunity from suits challenging their preliminary "strategic decisions," such as their decision not to prosecute a case. *Harris v. Krasner*, 110 F.4th 192, 198 (3d Cir. 2024) (citing *Roe v. City and Cnty of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997)). Thus, Krasner is immune from a civil suit based on his decision not to initiate a prosecution based on the information provided to him by Little.

Even if he were not immune, "[a] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution") (citations omitted); *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.") (citations omitted). Furthermore, "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Thus, Krasner's decision not to initiate a prosecution based on the information Little provided to him does not give rise to a cognizable constitutional claim. As there appears to be no other basis for a claim against Krasner, Little's claims against him will be dismissed with prejudice.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will grant Little leave to proceed *in forma pauperis*. Little's claims asserting violations of certain federal criminal statutes, the Pennsylvania Constitution, and the Fifth, Eighth, Ninth, and Thirteenth Amendments will be dismissed with prejudice.  Little's claims against Krasner, Chaplin Ken, and his claim against Outlaw based on her alleged failure to investigate crimes reported by Little will also be dismissed with prejudice. Little's First Amendment retaliation claim against Outlaw, his Fourth and Fourteenth Amendment claims against Adyemi, and his claims against Dr. Conlin will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Little will be granted leave to file a third amended complaint.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

An appropriate Order follows.

**BY THE COURT:**

 */s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**